IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

EFFIE LEONE WILCOX, individually, as
administrator of the deceased, CHARLES
WAYNE LYONS, and on behalf of the heirs
of the estate of CHARLES WAYNE LYONS                             PLAINTIFFS


VS.                              CASE NO. 06-CV-1100


JAMES ROBINSON, individually and in his
official capacity; DAVID BURTON, individually
and in his official capacity; ASHLEY COUNTY,
a subordinate political entity in the State of
Arkansas; and various JOHN DOES, individually
and in their official capacities, as employees, agents,
officers, supervisors, and/or policy makers of
Ashley County                                                    DEFENDANTS


**<u>MEMORANDUM OPINION</u>**

Before the Court is Defendants' Motion for Summary Judgment.  (Doc. No. 17).  The

Plaintiff has filed a response.  (Doc. No. 28).  The matter is ripe for consideration.

<u>BACKGROUND</u>

On September 16, 2003, Charles Wayne Lyons was booked into the Ashley County Jail

on a charge of possession with intent to manufacture methamphetamine.

On November 1, 2003, while still in jail, Lyons was visited by his mother, Effie Leone

Wilcox.  During this visit, Lyons told Wilcox that she shouldn't worry about him that he would

be out of jail in 15 days.  She states that Lyons seemed excited about getting out and did not

seem down or depressed.  The visit lasted from 2:26 p.m. until 2:43 p.m.  After the visit, Lyons

was returned to his cell.

At approximately 3:00 p.m., Jailer David Burton came on duty for the evening.  At the start of his shift, Burton did a jail check and head count.  He observed that all the inmates were going about their normal activities.  He also observed that inmate Aaron Govan was in the visitation room.

At around 3:18 p.m., Burton retrieved inmate Jackie McCain from his cell in order to process his release.  At that time, Burton observed Lyons sitting at a table in his cell reading.

At approximately 3:29 p.m., Burton went to the visitation room to escort inmate Aaron Govan back to his cell because his visit was over.  Burton states that it always takes a few minutes for an inmate to complete his visit and be restrained in order to be taken back to his cell.  Thus, at some time after 3:30 p.m., Burton began to escort Govan back to his cell.

While walking Govan back to his cell, Burton observed Lyons in his cell hanging from the frame of the shower with two towels tied together and looped around his neck.  He states that Lyons's skin was bluish in color and he looked to be dead.

On seeing Lyons, Burton immediately took Govan out of the cell area and into the booking room.  Once in the booking room, Burton handcuffed Govan to a bench in order to secure him.  While he was doing this, Burton began yelling to the dispatcher that Lyons had hung himself.  He told her to immediately call an ambulance and to call the Chief Deputy and Investigator.

At approximately 3:33 p.m., the dispatcher called the Chief Deputy and Investigator.  At approximately 3:34 p.m., the  ambulance was called.[1]  The ambulance arrived on the scene in less

---

[1]  There appears to be a time discrepancy between the police records and the ambulance run sheet as to the time of this call.  The police radio log shows the call being made to the ambulance at 15:34 (3:34 p.m.) and the ambulance arriving within the same minute at

than a minute as it was already out of the station and only a block from the jail.

When the ambulance crew arrived at the jail, they met Burton coming out of the booking room where he had secured Govan.  They immediately went to the cell where Lyons was hanging.  On entering the cell, the ambulance crew checked Lyons's vital signs.  The EMT's examination revealed that Lyons was pulseless (no pulse), apneic (not breathing), cyanosis (his lips were blue and pursed from lack of oxygen), his skin was cool to the touch and abrasions were noted around his neck.  Due to these physical findings, Shannon Shaver, the EMT, determined that any attempt to revive Lyons would be unsuccessful.  Therefore, the ambulance crew did not try and revive Lyons. Thereafter, at approximately 3:50 p.m., Shaver confirmed that Lyons had no cardiac activity (asystole) by means of a cardiac monitor.

Lyons was not cut down but rather was left hanging in his cell.  Shortly thereafter, Mr. Hartshorn, the coroner, arrived.  Lyons's body was released to his custody.

Lyons's death certification indicates that the immediate cause of death was hanging and the manner of death was suicide.  The death certificate lists the time of injury and death as unknown.

Upon hearing of Lyons's suicide, Sheriff James Robinson arranged for the Arkansas State Police to conduct an investigation and report their findings to the prosecuting attorney.  As a result of the investigation, no charges were filed and no action was taken by the State Police, the prosecuting attorney or the Sheriff's office.

---

15:34 (3:34 p.m.).  The ambulance run sheet shows the call coming in at 15:35 (3:35 p.m.) and the ambulance arriving on the scene at 15:36 (3:36 p.m.).  However, the testimony of  Shannon Shaver, the EMT, states that the ambulance was on the scene in well under a minute from the time the call was received.

3

When Wilcox heard of her son's suicide, she stated that she could not believe it because Lyons had never exhibited any self-harming or suicidal tendencies before.

On November 1, 2006, three years after Lyons's suicide, Wilcox  filed this action pursuant to  42 U.S.C. § 1983.  In her Complaint, Wilcox alleges that Defendants James Robinson, David Burton and Ashley County were deliberately indifferent to the serious medical needs of the decedent Charles Wayne Lyons.  Specifically, Wilcox claims that the Defendants failed to provide Lyons with emergency medical care after they found him hanging in his cell on November 1, 2003.  The matter is now before the Court on Defendants' Motion for Summary Judgement.

<u>STANDARD OF REVIEW</u>

The standard of review for summary judgment is well established.  The Federal Rules of Civil Procedure provide that when a party moves for summary judgment;

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995).  The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 250 (1986).  *See also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-*

4

*Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id.*  The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of LeSueur,* 47 F.3d at 957.  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

<u>DISCUSSION</u>

Plaintiff brings this suit against the Defendants pursuant to 42 U.S.C. § 1983.  Section 1983 imposes civil liability on a person acting under color of state law who deprives another of any "rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983. In order to prevail,  a §1983 plaintiff must prove the "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right."  *Kula v. City of Minnetonka,* 365 F.3d 590, 606 (8th Cir. 2003)(quoting *Shrum v. Kluck,* 249 F.3d 773, 777 (8th Cir. 2001)).  In this case, the Plaintiff alleges that the Defendants were deliberately indifferent to Lyons's serious medical needs.

5

In their Motion for Summary Judgment, Defendants first argue that the official capacity claims asserted in this case are barred by the statute of limitations.  Defendants contend that Arkansas' two year statute of limitations governing suits filed against sheriffs sued in their official capacity applies in this case.  See Ark. Code Ann. § 16-56-105.  The Court disagrees.

Because there is no federal statute of limitations in 42 U.S.C. § 1983, the Courts look to state law on this issue.  See 42 U.S.C. § 1988(a).  The Supreme Court has held that the most appropriate statute of limitations for § 1983 cases is the general or residual personal injury statute of limitation from the state.  *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 10 L.Ed.2d 594 (1989).  In Arkansas, the limitations period for personal injury actions is three years.  See Ark. Code Ann. § 16-56-105.

The Defendants argue that Ark. Code Ann. § 16-56-109 is the general or residual statute of limitations for suits against sheriffs and coroners suited in their official capacity.  However, there is nothing general or residual about Ark. Code Ann. § 16-56-109.  Rather, it carves out special protection for a select group of state actors – sheriffs and coroners.

Therefore, the limitation period for all § 1983 cases in Arkansas is set forth in the one most appropriate statute of limitations – Ark. Code Ann. § 16-56-105.   That period is three years.

Plaintiff is seeking relief against Defendants James Robinson and David Burton in both their individual and official capacities.   Individual liability under § 1983 requires "a causal connection between the misconduct complained of and the official sued."  *Harris v. Pirch,* 677 F.2d 681, 685 (8th Cir. 1982).  Official capacity claims against government officials are basically claims against the governmental entity itself.  *Brockinton v. City of Sherwood, Ark.,* 503 F.3d

6

667, 674 (8th Cir. 2007).  For a governmental entity to be liable under § 1983, this circuit has

consistently recognized that an individual must first be found liable on the underlying claims.  *Id.*

Therefore,  the Court will address the Plaintif's claims against each Defendant in his individual

capacity first.

   In the summary judgment motion, Defendant David Burton argues that the Plaintiff can

offer no proof of deliberate indifference in this matter.  Burton contends that he did not

deliberately disregard Lyons's medical needs after he found him hanging in his cell.  The

Plaintiff contends that he did.  Therefore, the question before the Court is whether Defendant

David Burton deliberately disregarded Lyons's serious medical needs in this case.

   Lyons's status in the Ashley County jail was that of a  pretrial detainee.  The Court

analyzes a pretrial detainee's constitutional claim regarding the denial of proper medical care

under the Fourteenth Amendment, using the Eighth Amendment's deliberate indifference

standard.  *Vaughn v. Green County, Ark.,* 438 F.3d 845, 850 (8th Cir. 2006).  "It is now settled, ...

'that deliberate indifference is the appropriate standard of culpability for all claims that prison

officials failed to provide pretrial detainees with adequate ... medical care.'"  *Hartfield v.*

*Colburn,* 491 F.3d 394, 396 (2007)(citing *Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir.

2006)(quoting *Butler*).  Thus, to establish deliberate indifference of a serious medical need, the

Plaintiff must prove that Lyons had objectively serious medical needs and that the Defendants

actually knew of but deliberately disregarded those needs.  *Meloy v. Bachmeier,* 302 F.3d 845,

848-49 (8th Cir. 2002).  Deliberate indifference "is akin to criminal recklessness and requires

something more than mere negligent misconduct."  *Drake v. Koss,* 445 F.3d 1038, 1042 (8th Cir.

2006).  It may be manifested by prison officials in intentionally denying or delaying access to

medical care.  *Id.* at 849 (citing *Estelle v. Gamble,* 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  Importantly, when a delay in medical treatment is the alleged constitutional deprivation, the objective seriousness of the deprivation must also be measured "by reference to the effect of delay in treatment."  *Laughin v. Schriro,* 430 F.3d 927, 929 (8th Cit. 2005)(quoting *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1188 (11th Cir. 1994)).  Therefore, to succeed on such a claim, the Plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment."  *Id.*  (quoting *Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir. 1997), which quoted *Hill,* 40 F.3d at 1188).

In this case, the Plaintiff alleges that there was a twenty minute delay between the time Burton discovered Lyons hanging in his cell and the time the EMTs examined his body.  She contends this delay is sufficient to support a finding of deliberate indifference as to Lyons's serious medical needs.  In support of her claim, Plaintiff states that Burton discovered Lyons hanging in his cell at 3:29 p.m.  He did not cut Lyons's body down or perform CPR on him.  Rather, Burton went to call an ambulance and waited for it to arrive.  The EMTs did not arrive and examine Lyons's body until 3:50 p.m.  This amounted to a twenty minute delay in Lyons receiving medical treatment that could have saved his life.

If the evidence showed such a delay, the Court would agree that Defendant Burton was deliberately indifferent to Lyons's medical needs.  However, the evidence does not make such a showing in this case.  Rather, it shows that at 3:29 p.m., Burton went to the visitation room to retrieve an inmate.  After a few minutes in the visitation room, Burton and the inmate stated back to the cell area.  Sometime after 3:30 p.m., Burton walked by Lyons's cell and saw him hanging from the frame of the shower.  On seeing Lyons's body, Burton immediately left the cell area and

took an inmate to the booking room to be secured.  As he was doing this, Burton yelled to the dispatcher to call an ambulance.  The ambulance was called at approximately 3:34 p.m.  It arrived at the jail in less than a minute.  When the ambulance crew arrived, they immediately went to the cell and checked Lyons's vital signs.  After examining the body, the EMTs determined that any attempt to revive Lyons would be unsuccessful.  Finally, at 3:50 p.m., the EMTs used a cardiac monitor to confirm that Lyons had no cardiac activity.

There was not a twenty minute delay between the time Lyons's body was discovered and the time help arrived as the Plaintiff contends.   Rather, the evidence clearly shows that within a few minutes of discovering Lyons's body, Burton called for medical help and it arrived.  There is no verifying medical evidence in the record showing such a short delay in medical treatment had a detrimental effect on Lyons.  Thus, Burton was clearly not deliberately indifferent to Lyons's medical needs in this case.  His actions did not amount to a violation of Lyons's constitutional rights.  Therefore, the Plaintiff's § 1983 claim against him in his individual capacity must fail as a matter of law.

Because Defendant Burton is not liable in his individual capacity on Plaintiff's § 1983 claim, he can not be held liable in this official capacity on that claim.  *Brockinton,* 503 F.3d at 675.  Therefore, Plaintiff's § 1983 claim against Burton in his official capacity must also fail as a matter of law.

Next, Defendant James Robinson argues that summary judgment should be granted as to him because there is no proof that he was deliberately indifference in this matter.  The Court agrees.

In § 1983 actions, supervisor liability is limited.  *Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir.

1995).  Supervisory jail personnel can be liable for deliberate indifference to serious medical needs only if they are aware of or personally involved in the alleged unconstitutional conduct. *Smith v. Clarke,* 458 F.3d 720, 723 (8th Cir. 2006).  In this case, Plaintiff has presented no evidence that Robinson knew of or was involve in the alleged constitutional violation – deliberate indifference to Lyons's serious medical needs.  Therefore, Robinson is not liable under § 1983 and Plaintiff's claim against him in his individual capacity must fail as a matter of law.

Because Defendant Robinson is not liable in his individual capacity on Plaintiff's § 1983 claim, he can not be held liable in this official capacity on that claim.  *Brockinton,* 503 F.3d at 675.  Thus, Plaintiff's § 1983 claim against Robinson in his official capacity must also fail as a matter of law.

Finally, Ashley County argues that summary judgment should be granted as to it because there is no proof of an unconstitutional county policy or custom in this case.  The Court agrees.

A county can be held liable under § 1983 if an action or policy itself violated federal law, or if the action or policy was lawful on its face but "led an employee to violate a plaintiff's rights [and] was taken with 'deliberate indifference' as to its known or obvious consequences." *Pietrafeso v. Lawrence County, S.D.,* 452 F.3d 978, 982 (8th Cir. 2006)(quoting *Board of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).  Here, Ashley County's medical policy provided that inmates with emergency medical needs would be transported to the Ashley Memorial Hospital for treatment.  This policy is lawful on its face.  Thus, Plaintiff's claim that the county's policies were constitutionally inadequate required proof that at least one of the individual Defendants violated Lyons's constitutional rights and caused his eventual death.  Plaintiff can not produce such proof because it has been held that

neither Defendant was deliberately indifferent to Lyons's serious medical needs.  Lyons's

constitutional rights were not violated by either Burton or Robinson.  Therefore, Plaintiff's claim

against the Ashley County must fail as a matter of law.

<u>CONCLUSION</u>

For the reasons discussed herein above, the Court finds that the Defendants' Motion for

Summary Judgment should be and hereby is **granted**.  A judgment of even date, consistent with

this Memorandum Opinion, will be issued.

IT IS SO ORDERED, this 30th day of September, 2008.


    /s/Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge

11